## AUTIN v. PISKE.

Circuit Court of Appeals, Fifth Circuit.
March 5, 1928.

Rehearing Denied March 31, 1928.

No. 5131.

1. Bankruptcy ⬤⟰288(6)—Court has jurisdiction of suit by trustee to recover property transferred to defraud creditors, and in absence of bona fide adverse claim may exercise it, summarily through referee (Bankr. Act, § 67e [11 USCA § 107]).

· Under Bankruptcy Act, § 67e (11 USCA § 107), the bankruptcy court has jurisdiction of a suit to recover property transferred to defraud creditors, which, in the absence of a bona fide adverse claim, it may exercise through the referee by summary proceedings.

2. Bankruptcy ⬤⟰288(5)—Summary jurisdiction exists as to property in court's possession.

If the property is actually or constructively in possession of the court, summary jurisdiction may be exercised, regardless of the character of the adverse claim.

3. Bankruptcy ⬤⟰288(7)—Referee has jurisdiction to determine whether adverse claim is colorable or made in good faith.

· Referee, when adverse claim is made before him, has jurisdiction to determine whether it is in good faith or merely colorable.

4. Bankruptcy ⬤⟰288(14)—Finding by referee that adverse claim to property was colorable only held sustained by evidence.

Evidence held to show that store in possession of one of bankrupts was in fact property of bankrupts, and transferred to a brother of one to defraud creditors, and such a finding by a referee in summary proceedings was within his jurisdiction.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

In the matter of Ernest Autin and Philip W. Autin, bankrupts; Richard Piske, trustee. · From a judgment, affirming a judgment of the referee, Clay Autin, claimant of property, appeals. Affirmed.

Alex W. Swords and Hugh S. Suthon, both of New Orleans, La., for appellant.

· St. Clair Adams, of New Orleans, La. (Leslie Moses and St. Clair Adams, Jr., both of New Orleans, La., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Ernest Autin and Philip W. Autin, respectively father and son, were adjudicated bankrupts, both as a commercial partnership and individually, on December 15, 1926, on their voluntary petition, and appellee was appointed trustee. At the time of adjudication Philip Autin was engaged in operating a grocery store in the city of New Orleans, but this property was not scheduled and surrendered. At the first meeting of the creditors it developed that title to the said store was ostensibly in the name of Clay Autin, brother of Philip Autin. Appellee took a rule upon Clay Autin before the referee to show cause why the said grocery store and its contents should not be turned over to him for administration as having been acquired with the money of the bankrupts. Appellant objected to the jurisdiction of the court and objected to the matter being tried in a summary manner. There was judgment by the referee in favor of appellee, and on appeal to the District Court this was affirmed. Error is assigned to the overruling of the pleas to the jurisdiction.

The allegations of the rule show a cause of action arising under section 67e of the Bankruptcy Act (11 USCA § 107) to recover

property transferred by the bankrupts within four months before the filing of the petition, with intent to hinder, delay, and defraud their creditors, and alleges a conspiracy between the bankrupts and Clay Autin' to that end.

[1, 2] The bankruptcy court has jurisdiction of a suit by the trustee to recover property of the bankrupt in the hands of third persons, transferred within four months of bankruptcy with the intent to hinder, delay, or defraud the creditors, in violation of section 67e of the Bankruptcy Act (11 USCA § 107), and may exercise this jurisdiction in a summary manner through the referee, if there is no adverse claim by the said third person, or such claim is merely colorable on the undisputed facts. Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405; Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897. And, if the property is actually or constructively in the custody of the court, this jurisdiction may be exercised, regardless of the character of the adverse claim. Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157; Taubel, etc., Co. v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770.

[3] Of course, a claim may be adverse and substantial, even though in fact fraudulent and voidable; but the referee is not bound by the mere assertion of the claim, and may make a preliminary inquiry as to the facts, to determine whether it is colorable. However, when the evidence develops that there is reasonable room for controversy, he must desist and remit the trustee to a plenary suit in a court of competent jurisdiction. Naturally, each case depends upon its own particular facts, when an adverse claim is set up and the question is presented as to whether the referee has exceeded his authority in investigating the colorable character of the claim, and has in fact determined the controversy on its merits on disputed evidence.

[4] In this case the material facts are undisputed, and it is not necessary to look further than the testimony of Philip Autin and Clay Autin to determine them. They are in substance these:

Ernest Autin and Philip Autin, as partners, were conducting a store in Lafourche parish, Louisiana, in September, 1926, and prior thereto. The store burned, and they collected $3,210 of insurance, which was paid to them in cash. This money was not deposited in bank, but was put in a safe in the home of Clay Autin, or at least $2,500 was. Thereafter, on November 23, 1926,

Clay Autin purchased from Mrs. Jean Melin a grocery store, located at 2703 Ursuline street, New Orleans, as a going concern and paid $2,142.50 in cash money. Subsequently the lease of the building was transferred to him. Philip Autin was present at the sale, and payment was made mostly in bills of $100 denomination, which corresponded to the denomination of bills received from the insurance companies. Philip Autin was immediately put in charge of this store, and moved on the premises with his family, occupying the rear portion. He managed the business without interference from Clay Autin, purchasing goods and hiring the necessary help, and Clay Autin, up to the time the case was tried, which was in January, 1927, had derived no profit whatever from it and visited the store only at intervals. Clay Autin was employed in a moving picture house, earning from $40 to $46 per week. He had a wife and two children to support, and at times borrowed money from his employers. He, or his wife, owned some stock in a homestead association, on which $400 was paid initially, but was never increased by further payments. He did not claim any other property except the store in question. He had a small bank account at one time, but could not remember the name of the bank, and had no bank account at all when he bought the store. He testified that he always kept $3,000 or $4,000 in cash in the safe in his home, as he bought and sold secondhand automobiles. However, he was unable to tell of any such sales, except one purchased from his father-in-law, a Ford coupé, which transaction involved perhaps $200.

The bankrupts, although adjudication was within two months after the insurance money had been collected, surrendered no cash to the trustee, and did not schedule the store that Philip Autin was operating. In explanation of the loss of the insurance money Philip Autin testified that he had withdrawn $2,500 in cash from the safe in his brother's residence and had started for the country to make payment to a creditor, who was pressing him. This was after the purchase of the store by Clay Autin. On the public road near Westwego, Jefferson parish, he was held up and robbed. His testimony in regard to this occurrence was so vague and indefinite of itself, and so improbable, that it is unworthy of belief, and the referee was justified in rejecting it entirely. The same may be said of Clay Autin's testimony regarding his accumulation of $3,000 or $4,000 in cash, which he kept on hand in his residence. The inevitable deduction from the testimony of

these two witnesses is that the store was in fact purchased with the insurance money belonging to the bankrupts, and that the claim of Clay Autin is fictitious, and the transfer of title to the grocery store in his name a pure simulation.

A different question would have been presented, had the grocery store not been in the actual custody of Philip Autin at the time of adjudication; but on the case presented, especially considering the custody of the property, we conclude that the District Court had jurisdiction of the controversy and was authorized to decide it in a summary manner.

The other errors assigned are unworthy of consideration and require no discussion.

Affirmed.