In re CARBURETOR CORP.
HALPERT v. ENGINE AIR
SERVICE, Inc. et al.

No. 133, Docket 22495.

United States Court of Appeals
Second Circuit.

Argued Jan. 13, 1953.

Decided Feb. 26, 1953.

Writ of Certiorari Denied May 18, 1953.
See 73 S.Ct. 939.

See also, D.C., 91 F.Supp. 782.

James G. Moore, Garden City, N. Y., Emerson A. Swartz, Garden City, N. Y., of counsel, for appellants, appearing specially.

Max Schwartz, Brooklyn, N. Y., for trustee-appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The question presented by this appeal is whether the court had summary jurisdiction to make the turn over order from which the appeal has been taken.

The Carburetor Corporation, the bankrupt, was organized under the laws of New York in 1948 to engage in the business of overhauling carburetors and other engine accessories. Its authorized capital stock consisted of 3000 shares of class A with voting rights, of which 1000 shares were issued to George E. Staley, and 500 shares each to Lawrence A. Hauft, Lena P. Hauft, Walter S. Burfoot and May D. Burfoot; and 2000 shares of non-voting stock which were never issued.

In 1934 Engine Air Service, Inc., had been organized under New York law to engage in the business of overhauling airplanes. It engaged in that business until 1949 at 199 East 2nd St., Mineola, N. Y., where it owned real estate and a substantial amount of machinery, tools, trucks, supplies and office equipment. It had an authorized capital stock of 100 shares of which Lawrence A. Hauft, Lena P. Hauft, Walter S. Burfoot and May D. Burfoot each held twenty-five shares.

While the bankrupt was in business, it used for that purpose part and, at times all, of the premises of Engine Air Service, Inc., at Mineola and the latter's machinery, equipment and part of its inventory in those premises under what was at first merely an oral arrangement between the two corporations.

On April 26, 1949, George E. Staley, Walter S. Burfoot and May D. Burfoot gave Kenneth S. Guiterman and Franklin W. Guiterman an option to purchase their stock in the bankrupt, exercisable during the following two year period, and on the same day executed a voting trust agreement under which the Guitermans, as trustees, became entitled to "exercise all stockholders' rights of every name and nature * * * as though absolute owners of the stock" until May 1, 1951. Also, on April 26, 1946, on May 4, 1949 and on May 31, 1949, agreements were entered into which together amounted to an offer by Lawrence and Lena Hauft to sell their stock in the bankrupt to the Guitermans and for the eventual distribution of the bankrupt's class A stock so that Walter S. Burfoot and George E. Staley would hold 49 per cent of it and the Guitermans 51 per cent. By these agreements, it was also provided that when the Guitermans thus got control of the bankrupt they would cause it to offer to buy all of the physical assets of Engine Air Service, Inc., and to offer to employ Burfoot and Staley for two years at an annual salary plus 5% of its net earnings. The purchase of the Hauft stock was completed.

What happened, however, was that, instead of buying the physical assets of Engine Air Service, Inc., the bankrupt bought from its four stockholders all of its capital stock. The purchase price was $252,000, payable in part in installments through 1949, in part in 1950, and the remainder on or before May 4, 1951, with interest; but the bankrupt failed to make the payment with interest due on December 31, 1949 and has since been in default. The stock was held in escrow endorsed in blank under the terms of the contract; and there were provisions to the effect that if the buyer failed to pay as agreed, the stock should "immediately vest in and be transferred to" the sellers who should hold it as trustees as security for the payments due from the buyer. This security interest gave the sellers, on default, power to control the Engine Air Service corporation and power to sell its stock and assets, or the assets of the bankrupt, and use the proceeds to pay the amount due.

On June 1, 1949 Engine Air Service, Inc., executed a written lease of its real and personal property in Mineola to the bankrupt and authorized the bankrupt to operate its business and deplete the inventory there. The bankrupt assumed liability, *inter alia,* for the care, repair and replacement of the leased property, for the payment of running expenses, interest on existing mortgages, and wages, and for the obligations of the lessor under its contracts. In return, the bankrupt agreed to account to the lessor every four months and to pay a rental of one dollar per month. Either party could terminate the lease on the first day of any month by giving ten days' notice of its election to terminate; and, in such event, the bankrupt agreed to return, or account for, all the property covered by the agreement, "damage by the elements and reasonable wear and tear excepted."

On December 31, 1949 the bankrupt was in default under its contract to purchase the Engine Air Service, stock; and on January 31, 1950 Engine Air Service, Inc., terminated the lease of its facilities upon due notice, and the next day it brought an action to dispossess the lessee. On February 23, 1950 the lessor claims to have taken actual possession of the leased real estate and the personal property then on the premises which had been included in the lease. Thereafter it conducted the business and completed the unfinished engine orders of the bankrupt.

On February 24, 1950, the bankrupt filed its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. and on April 20, 1950 it was adjudicated a bankrupt and the appellee is its trustee in bankruptcy.

The foregoing is by no means a complete summary of the situation as of the time the lessee was adjudicated a bankrupt, but it will suffice to show the complicated state of affairs and some of the legal problems which must be solved in determining the rights of the trustee in respect to the leased property. As regards the real estate, the title at all times stood in the name of claimant Engine Air Service, Inc., and, as of the date the lessee filed its petition for an arrangement, the lessor was apparently in possession of the premises under a claim of right far from merely colorable. Also at the time of the petition, the bankrupt was in default under its contract to purchase the stock of Engine Air Service, Inc., from the latter's stockholders. Since, under the terms of the contract, substantial payments were to be made in the future by the bankrupt to these individual claimants and there has been no adoption of the contract by the trustee, the rights of these claimants as stockholders of Engine Air Service, Inc., must be determined in the event there is a recapture. Yet summary jurisdiction was exercised below to resolve all the factual and legal disputes involved adversely to the claimants.

Of course the claimants may not win in the end, but they are not without substantial basis either in law or in fact for claiming the property covered by the order. The claims are not, therefore, merely colorable and the court was without summary jurisdiction. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405. This trustee is faced with genuine controversies with third persons who raise issues of fact and of law which must be resolved in a plenary suit. Ford v. Magee, 2 Cir., 160 F.2d 457.

Order reversed and petition dismissed.