348 F.2d 869
 B. L. SUHL, Margaret Wierman, Currency Exchange, and American Security Currency, Limited, Appellants,
v.
A. J. BUMB, Receiver in the Matter of Security Currency Services Ltd., a California corporation bankrupt, Appellee.
 No. 19737.
 United States Court of Appeals Ninth Circuit.
 June 28, 1965.
 Rehearing Denied July 27, 1965.
 
 William J. Tiernan, Los Angeles, Cal., Virginia Fabian, Pasadena, Cal., Gerald Romanik, Los Angeles, Cal., for appellants.
 Irving Sulmeyer, Sulmeyer & Kupetz, Los Angeles, Cal., for appellees.
 Before CHAMBERS, BARNES and DUNIWAY, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 Bud Lewis Suhl, Margaret Wierman, and their two wholly-owned corporate entities — Currency Exchange and American Security Currency, Ltd. — have instituted this appeal from the decision of a referee in bankruptcy, affirmed by the district court, which found them indebted to the bankrupt, Security Currency Services, Ltd., in the sum of $455,343.23. Appellants challenge the jurisdiction of the referee to make such a determination in a summary, rather than plenary, proceeding.
 
 
 2
 The proceedings in question originated under Chapter XI of the Bankruptcy Act. Under Sections 24 and 25 of that Act, we have jurisdiction to entertain this appeal from the final order of the district court.
 
 
 3
 Pursuant to the provisions of the Bankruptcy Act, the referee in bankruptcy is vested with the power to determine the rights of adverse claimants to the assets of the bankrupt's estate. In the course of the administration of the estate, the adverse claims may be resolved without resort to plenary suits; the bankruptcy court rather may exercise summary jurisdiction to determine the proper distributions. This summary procedure is, of course, necessary to safeguard against cumbersome litigation for all conflicting claims to each asset of the estate. To invoke this summary procedure, however, the assets in question must be in the possession of the bankrupt. The possession requirement has not been applied in an unduly restrictive fashion; generally, if the controversy involves property in the actual or constructive possession of the bankruptcy court, the court may adjudicate summarily all rights and claims pertaining thereto. On the other hand, if the property is within the actual or constructive possession of a third party who asserts a bona fide claim to the property, the bankruptcy court cannot summarily determine the merits of that claim without the consent of the third party; rather, a plenary suit is required.
 
 
 4
 In the present suit, appellants were in actual possession of substantial assets which the trustee in bankruptcy claimed were a part of the bankrupt's estate. It was the trustee's contention, agreed in by the referee and district court, that these assets were in the constructive possession of the bankrupt corporation. It was also contended by the trustee, and accepted by the referee and district court, that the merits of appellants' adverse claims to these assets could be evaluated in the exercise of the bankruptcy court's summary jurisdiction because the adverse claims were colorable, not bona fide. Appellants argue that this exercise of summary jurisdiction exceeded the powers of the bankruptcy court, and they attack the findings of the referee which justified this exercise of jurisdiction.
 
 
 5
 The extraordinary facts of this elaborate matter, to the extent they have been uncovered, are detailed in the referee's findings. An extract of these complex facts is contained in the "Certificate on Review from Referee's Order," and reads as follows:
 
 
 6
 "Margaret Wierman is the mother of B. L. Suhl. At all times since at least 1959, B. L. Suhl and Margaret Wierman, under a partnership agreement, owned at least 85% and at times 100%, of the capital stock of the debtor corporation. The debtor corporation was engaged in the money order business within the state of California, under state regulation. Sometime in 1959, B. L. Suhl and Margaret Wierman formed American Security Currency, Ltd., to engage in the money order business outside the state of California, and capitalized it for $5,000.00. B. L. Suhl and Margaret Wierman at all times owned 100% of the capital stock of American Security Currency, Ltd. Because of the nature of its business and the amount of its capitalization, American Security Currency, Ltd. had banking problems, including difficulty or inability in maintaining its bank account in a collected position. From 1959 to June, 1961, Margaret Wierman acted as President of Security Currency Services, Ltd. In 1961 B. L. Suhl and Margaret Wierman, using funds of American Security Currency, Ltd., purchased controlling interest in the Frontier Bank, at Covello, California. Mrs. Wierman was installed as President of the Frontier Bank and a Wierman-Suhl nominee, Paul E. Lewis, was made President of the debtor. At all times, however, B. L. Suhl and Margaret Wierman maintained domination over the debtor corporation. The Frontier Bank and the collective position of the debtor corporation were used by B. L. Suhl and Margaret Wierman to carry the uncollected position of American Security Currency. Finally, under instructions of Suhl and Wierman, the debtor corporation, without the consent of its board of directors, issued a written authorization for the Frontier Bank to charge its (Security Currency Services, Ltd.) trust account for any money orders of American Security Currency, Ltd. In January of 1964, the Frontier Bank purporting to act under said authorization, debited the money order trust account of the debtor corporation for money order shortages in the account of American Security Currency, Ltd., in the amount of $135,730.22 on January 13, 1964, $48,626.46 on January 14, 1964, and $30,990.46 on January 24, 1964. The agency account of the debtor corporation was also charged for shortages of American Security Currency, Ltd. in the sum of $8,283.61. Prior to this, in December of 1963, Suhl and Wierman had already caused to be withdrawn from the trust account of the debtor corporation, funds of the debtor corporation in the amount of $85,787.00 and caused said funds to be paid over to American Security Currency, Ltd. without any consideration therefor. The books of American Security Currency, Ltd. were not produced, despite the issuance of a subpoena duces tecum therefor, which was served upon the president of American Security Currency, Ltd. to wit: B. L. Suhl, and its purported secretary, Aaron Blackman. Testimony traced the whereabouts of the books to a messenger service for delivery to B. L. Suhl. B. L. Suhl invoked the provisions of the Fifth Amendment of the United States Constitution when asked as to the whereabouts of the records." (Tr. 45-47.)
 
 
 7
 On the basis of the above facts, the referee concluded that a unity of ownership and control existed between Suhl and Wierman on the one hand and the debtor corporation on the other. He found "that at all times since 1959, the debtor corporation has been a mere shell and naked framework that Suhl and Wierman used as a mere conduit for the conduct of their personal business property and affairs and that the corporation was used and continued by Suhl and Wierman pursuant to fraudulent plans, scheme and device conceived and operated by Suhl and Wierman, whereby the income, revenue and profits of the debtor corporation were diverted by Suhl and Wierman to Suhl and Wierman and to their wholly owned corporation, American Security Currency, Ltd." (Tr. 47-48.)
 
 
 8
 The referee concluded that appellants' claim to the assets sought by the trustee was frivolous. In the absence of a bona fide claim to this property, the referee concluded the property was in the constructive possession of the bankruptcy court and that the bankruptcy court could exercise its summary jurisdiction to determine the merits of the adverse claim. Concluding that appellants were the alter egos of the debtor corporation, the referee held that the trustee could administer the assets of the alter egos subject only to the right of Suhl and Wierman to the continued possession of their exempt assets. The referee also summarily concluded that appellants were indebted to the bankrupt in the sum of $455,343.28, and that the trustee was entitled to a turnover order against each of appellants in that amount.
 
 
 9
 The power of a bankruptcy court to resolve adverse claims concerning the assets of the bankrupt's estate is indeed a power of imposing magnitude. Since it results in depriving adverse claimants of a plenary suit, we must ever be cautious lest we permit its extension to a situation that should not permit summary disposition. Where the property in question is in the actual custody of the bankrupt's estate, summary jurisdiction is clearly authorized. Where the physical property is in the constructive possession of the bankrupt, e. g., where a salesman has a truck laden with the bankrupt's wares, we also have no difficulty in upholding the exercise of summary jurisdiction. When, however, the property in question is in the possession of third parties who purport to hold the property free of any claim of the bankrupt, we must carefully examine whether the expedited summary process is appropriate to the situation. This would seem particularly true in a situation, such as the present, where the property in question is a money claim against third parties rather than a physical asset alleged to be part of the bankrupt's estate. Judicial recognition of these relevant factors is typified by the statements of the circuit court and Supreme Court in Magnolia Pet. Co. v. Thompson, 106 F.2d 217 (8th Cir. 1939), rev'd on other grounds 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940):
 
 
 10
 "It is now settled that the bankruptcy court has power in a summary proceeding to adjudicate, without consent, controversies concerning the title to property the physical possession of which is in the actual or constructive possession of the trustee, and, with consent of the adverse claimants, the title to property not in the possession of the trustee; but the court is without power to adjudicate adversary claims to the title to property, without consent, not in the actual or constructive possession of the trustee." 106 F.2d at 222.
 
 In the Supreme Court it was said:
 
 11
 "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy." 309 U.S. at 481, 60 S.Ct. at 630.
 
 
 12
 In the present case, the referee, without resort to a plenary proceeding with its attendant safeguards, found that appellants had fraudulently extracted funds from the bankrupt, and, as a result, appellants would be compelled to turn over substantially all their assets for the administration of the bankruptcy court. The referee, by virtue of summary proceeding, found that appellants were the alter egos of the bankrupt and that assets to which appellants had ostensible title and actual possession were consequently subject to the administration of the bankruptcy court.
 
 
 13
 The referee's justification for its summary determination was that appellants had no substantial defense to the trustee's claims, and, therefore, appellants' assets were in the constructive possession of the trustee. Appellants reply that they rely on a lack of jurisdiction. We find that no matter how heinous appellants' acts may have been, appellants are entitled to a plenary proceeding before a bankruptcy court can subject them to its unrestricted jurisdiction. No case cited by appellee extends summary jurisdiction to the lengths suggested here. The summary proceedings conducted by the referee certainly may lead one to reasonably conclude that appellants have no substantial defense to the trustee's allegations of fraud. But without actual or constructive possession of the property in the hands of the trustee, summary jurisdiction is not authorized, and adverse claimants must be afforded the right to a plenary independent suit. Unlike the bulk of the cases cited by appellee, this is not an instance of an adverse claimant making a colorable claim to a piece of property which results in a finding of constructive possession in the trustee. This is rather a finding that appellants are the alter egos of the bankrupt and thus subject to the complete control of the bankruptcy court. The distinction between the traditional notion of constructive possession and what is involved here can perhaps best be brought out by the statement of the court in Matter of Retail Stores Delivery Corp., 5 F.Supp. 892, 893 (S.D.N.Y. 1933):
 
 
 14
 "Barring cases where the party proceeded against consents, the jurisdiction of the bankruptcy court to take summary action regarding the bankrupt estate rests on possession, actual or constructive, of the property involved. [case] Cases of jurisdiction supported by actual possession are where the property is or was in the physical custody of an officer of the bankruptcy court. [cases] Then there were the cases of constructive possession, where the property at petition filed was in possession of the bankrupt, his agent, bailee, or other person holding for him, or was in possession of one whose claim, though asserted as adverse, is found on inquiry to be no more than colorably so. [cases]"
 
 
 15
 The only manner by which the trustee can be deemed in constructive possession of appellants' assets is by a determination of alter ego, i. e., that the appellants and the bankrupt are pragmatically one and the same. The few instances of alter ego determinations in summary proceedings involve fact situations substantially different from the present. They rather invariably concern situations in which an insolvent individual has conveyed his property to a newly-formed corporation with the express view to withdrawing that property from the reach of creditors. These cases stand only for the proposition that a finding that adverse claimant is a legally distinct entity from the bankrupt does not in itself compel the use of a plenary suit. Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S. Ct. 904, 85 L.Ed. 1293 (1941).
 
 
 16
 The Sampsell case, supra, involved the classic illustration of a bankrupt seeking to utilize a dummy corporation and being prevented from doing so by the judicial use of the alter ego doctrine. The Supreme Court refused to condone such a devious attempt to avoid the summary jurisdiction of the bankruptcy court by removing assets from the bankrupt's actual or constructive possession:
 
 
 17
 "The referee found, inter alia, that the transfer of the property to the corporation was not in good faith but was made for the purpose of placing the property beyond the reach of Downey's creditors and of retaining for Downey and his family all of the beneficial interest therein; that the stock was issued in satisfaction of Downey's claim against the corporation, when Downey was hopelessly insolvent, to prevent Downey's creditors from reaching the assets so transferred; that the corporation was `nothing but a sham and a cloak' devised by Downey `for the purpose of preserving and conserving his assets' for the benefit of himself and his family; and that the corporation was formed for the purpose of hindering, delaying and defrauding his creditors. The referee accordingly ordered that the property of the corporation was property of the bankrupt estate and that it be administered for the benefit of the creditors of the estate." 313 U.S. at 216, 217, 61 S.Ct. at 906.
 
 
 18
 "Mere legal paraphernalia will not suffice to transform into a substantial adverse claimant a corporation whose affairs are so closely assimilated to the affairs of the dominant stockholder that in substance it is little more than his corporate pocket. Whatever the full reach of that rule may be, it is clear that a family corporation's adverse claim is merely colorable where, as in this case, the corporation is formed in order to continue the bankrupt's businesses, where the bankrupt remains in control, and where the effect of the transfer is to hinder, delay or defraud his creditors." Id. at 218, 61 S.Ct. at 907.
 
 
 19
 The present case presents a situation not analogous to what transpired in Sampsell. We have here an order that all the assets of certain individuals and their wholly-owned corporate entities be administered as the assets of the debtor corporation. This order would create a precedent for the administration by the bankruptcy court of all the assets of an individual or individuals upon the summary determination that that individual or individuals had perpetrated a fraud against the bankrupt. It would no longer be necessary to justify summary jurisdiction by proof that specific assets were in the actual or constructive possession of the bankrupt. Rather, a summary determination of fraud would subject all of an individual's assets to the bankruptcy court's summary jurisdiction. This abrogation of an individual's right to a plenary proceeding we cannot accept. As stated in appellants' brief (pp. 18-19):
 
 
 20
 "The fact that the relationship between an individual and the corporation is such that he may be liable for the obligations of the corporation does not mean that the individual's assets are those of the corporation, or that he `is' the Corporation and is a bankrupt along with the corporation."
 
 
 21
 We find, therefore, that this was not a proper occasion for the use of summary jurisdiction. In the absence of property of the debtor in the actual or constructive possession of the court, no basis for summary jurisdiction is provided. A tortious conversion of funds, as alleged here, can only be established in a plenary suit. A summary proceeding cannot establish the fact of the conversion and in that manner justify the treatment of the converter's assets as part of the bankrupt's estate, and, in turn, justify the court's administration of the converter's assets. To sustain such an approach would result in a sacrifice of one's right to a full-dress trial to refute allegations of tortious behavior.
 
 
 22
 The order of the referee, affirmed by the district court, is reversed. Appellants' assets are not to be treated as part of the bankrupt estate until a plenary suit determines the issue. Nothing in this decision is intended to prejudice any future efforts by the trustee to seek a redress of grievances against appellants for their alleged tortious conduct, nor to indicate any opinion that the assets sought to be reached by summary proceedings cannot, or should not, be reached in a proper plenary proceeding, either under an alter ego theory, or otherwise.