In the Matter of **KIRCHOFF FROZEN FOODS, INC., Bankrupt.**

**Barnet DEXTER,** as Trustee in Bankruptcy of Kirchoff Frozen Foods, Inc., Petitioner,

v.

Frank H. **GILBERT** and Beverly L. Gilbert, husband and wife, Respondents.

No. B–70–131 Phx.

United States District Court, D. Arizona.
May 15, 1972.

---

2. Section 7604(b) also extends this remedy to summonses issued pursuant to Sections 6420(e)(2), 6421(f)(2), 6424(d)(2) and 6427(e)(2).

Henry Jacobowitz, Phoenix, Ariz., for Barnet Dexter, Trustee.

Robert H. Green, Phoenix, Ariz., for respondents.

## OPINION* AND ORDER

COPPLE, District Judge.

Respondents, Frank and Beverly Gilbert, have filed a petition for review of the Referee's findings of fact and conclusions of law and a petition for review of his order allowing costs. The Trustee has filed a cross-petition for review. Both parties have filed memoranda in support of their motions and in opposition to the other party's.

After an extensive hearing in bankruptcy court the Referee ordered respondents to turn over $111,460.16, together with Trustee's costs and interest, to the Trustee. The following is a summary of the Referee's findings of fact.

Kirchoff Frozen Foods, Inc., had been in financial trouble some time before Donald Kirchoff, Frank Gilbert [1] and Richard Mitchell, an attorney, went to Los Angeles on April 2, 1969, to meet with several of the corporation's major creditors. These creditors were advised on an individual basis that the Gilberts were interested in investing new capital in Kirchoff Frozen Foods, Inc. This proposal was later included in the general plan for extension which was sent to all the corporation's creditors.

On May 2, 1969, Mr. Kirchoff and Mr. Gilbert made another trip to Los Angeles in an attempt to persuade the corporation's creditors to accept the plan for extension. When queried as to the nature of his investment, Mr. Gilbert was evasive as to its precise nature.[2] He said nothing about a secured loan.

As a condition for the creditors accepting the plan of extension, Frank Gilbert was required to personally guarantee payment for all shipments during

---

* *See* Ninth Cir.R.Prac. 21.

1. The Gilberts were apparently not stockholders of the corporation at that time. Donald L. Kirchoff and Lois M. Kirchoff were the sole stockholders of Kirchoff Frozen Foods, Inc., until January 8, 1971.

2. Although Frank Gilbert agreed at that meeting to prepare a financial statement showing his proprietary interest and the new corporate structure, he did not do so, even after the repeated requests of the chairman of the creditors' committee.

the ninety days following the acceptance of the plan of extension dated April 17, 1969.[3] The creditors then accepted the plan either formally, informally or by inaction.

On June 6, 1969, the Gilberts deposited into a new account, under the name of "Gilbert Foods" the sum of $50,000. An additional $20,000 was deposited in this account on August 4, 1969, by Beverly Gilbert by a check drawn on her personal account. Frank Gilbert had complete control of that account.

In the early part of August Richard Mitchell drew up notes, security agreements and financial statements which purported to give the Gilberts a security interest in the corporation's accounts receivable for all moneys advanced by the Gilberts. (Exhibits A–4 through A–9.) Although some of the documents bear the date June 3, 1969, they were all signed on August 20, 1969, at a board of director's meeting. No consideration was given the corporation on the date the documents were signed.

At the same meeting on August 20, Frank Gilbert was elected Secretary and a Director on the Board and Beverly Gilbert was elected Vice President of the corporation. Donald Kirchoff, as President, was voted a $1,500 per month salary and Frank Gilbert was voted a $1,000 monthly salary. The amount of salary each was to receive was agreed upon prior to the meeting. Frank Gilbert did little for the corporation. It was also agreed prior to the meeting that the Kirchoffs could keep their two leased Cadillacs at the corporation's expense. This private agreement between the Kirchoffs and the Gilberts was not brought before the board for approval.

Things went badly for the corporation and on November 18, 1969 Frank H. Gilbert made available to the corporation another $25,000. On January 7, 1970, at a point when the corporation was hopelessly insolvent, the Kirchoffs relinquished to the Gilberts all the corpora-tion's stock and resigned as officers and directors of the corporation.

Shortly thereafter, the Gilberts reached an agreement with Alvin De Frates, who was still the treasurer and a member of the board, that for a "bonus" of $3,000 the latter would sign all documents put before him and turn over to the Gilberts all incoming sales proceeds of the corporation. Between January 8, 1970 and February 13, 1970 the corporation was almost completely liquidated and the proceeds turned over to the Gilberts. The day-to-day business activities of the corporation were carried out but none of the corporate debts accumulated during that period were, with few exceptions, paid. During that period Alvin De Frates turned over to the Gilberts the sum of $93,866.69.

The Gilberts also received funds by surrendering a life insurance policy on the life of Donald L. Kirchoff, which was promised to creditors originally but later promised to them. They received $3,623.00 from this policy.

On January 26, 1970 a petition for involuntary bankruptcy was filed.

The Referee in the decision under review categorized the funds diverted from the corporation by the Gilberts and ordered the respondents to turn over the following amounts:

1. $92,531.17—withdrawal of sales proceeds and accounts receivable, less a credit of $1,335.52.

2. $3,000.00—"salary" withdrawals.

3. $11,105.99—corporate funds expended to pay Donald L. Kirchoff's personal obligations, with the permission and consent of Frank H. Gilbert.

4. $3,623.00—cash surrender value of Paul Revere Life Insurance Company policy on the life of Donald L. Kirchoff.

5. $1,200.00—lease payments on one of the Kirchoff Cadillacs during the period of June to December, 1969.

3. This personal guarantee was later extended another ninety days.

The Gilberts have filed a petition for review largely on the ground that the Referee lacked jurisdiction to order them to turn over funds in their possession. Essentially, they argue that even though they were officers of the bankrupt corporation at the time they acquired the funds, they liquidated the corporate assets pursuant to valid security agreements they had with the corporation (Exhibits A–4 and A–7) and are third parties to the bankruptcy and thus entitled to a plenary suit to determine their rights under the security agreements.

Referee's Conclusion of Law No. 7 sets forth two bases for the Referee's finding that summary jurisdiction exists: (1) actual and constructive possession of the funds in the court, and (2) consent to jurisdiction by the Gilberts.

The Referee's finding that the money in question was in the actual and constructive possession of the court will be treated first.

■ The power of the bankruptcy court to proceed summarily as to controversies over property rests largely upon whether or not the subject matter of the controversy is in its possession, either actually or constructively. 2 W. Collier, Collier on Bankruptcy ¶ 23.05 [1] (14th ed. 1971).

■ Where possession is found to be in a third person, then the question becomes one of the substantiality of the claim under which possession is held, and the bankruptcy court has constructive possession and may exercise its jurisdiction over that property where the claim asserted is a mere pretense or is merely colorable. 2 W. Collier, Collier on Bankruptcy ¶ 23.05 [1] (14th ed. 1971).

■ While it is a general rule that property found to be in the possession of directors or officers of the bankrupt corporation will be deemed to be in possession of the bankrupt, there is an exception where the officer or director has shown an adverse claim. Ford v. Magee, 160 F.2d 457 (2d Cir.), cert. denied, 332 U.S. 759, 68 S.Ct. 58, 92 L.Ed. 345 (1947); Wisconsin Banking Commission v. Van Steenwyck, 81 F.2d 337 (7th Cir. 1936); Brenner v. Sawyer, 24 F.2d 167 (1st Cir. 1928); In re Franklin Brewing Co., 263 F. 512 (2d Cir. 1920); In re Marquette, Inc., 254 F. 419 (2d Cir. 1918); 2 W. Collier, Collier on Bankruptcy ¶ 23.06 [3], at 503–04 & n. 27 (14th ed. 1971).

■ An adverse claim is substantial and sufficient to deprive the bankruptcy court of summary jurisdiction if there is a contested matter of right, involving some fair doubt and reasonable room for controversy. American Mannex Corporation v. Huffstutler, 329 F.2d 449 (5th Cir. 1964); In re Carburetor Corp., 202 F.2d 75 (2d Cir. 1953); Atlanta Flooring & Insulation Co., Inc. v. Russell, 146 F.2d 884 (5th Cir. 1945); 2 W. Collier, Collier on Bankruptcy ¶ 23.07 [2] (14th ed. 1971) and cases cited. If its validity depends upon disputed facts as to which there is a conflict of evidence or question of law, there must be a plenary action. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926); In re California Paving Co., 95 F.Supp. 909 (N.D.Cal.1951), aff'd sub nom. California Paving Co. v. L. C. Smith, 193 F.2d 647 (9th Cir. 1952), cert. denied, 343 U.S. 957, 72 S. Ct. 1052, 96 L.Ed. 1357 (1953); In re Marquette, Inc., supra; In re Midtown Contracting, 243 F. 56 (2d Cir. 1917); 2 W. Collier, Collier on Bankruptcy ¶ 23.07 [2] (14th ed. 1971).

■ The exercise of summary jurisdiction is especially inappropriate when it is necessary to weigh the testimony of third parties before determining the substantiality of the person's claim. In re Wire Corporation of America, 131 F. Supp. 586 (D.N.J.1955); see In re Silver, 2 F.Supp. 628 (S.D.Fla.1933).

■ In all cases where the summary power of the bankruptcy court is disputed, a preliminary inquiry is necessary to ascertain the nature of the possession. If it is ascertained that a substantial claim exists as to the property adversely held, even though it is probable that

such claim can be defeated, the bankruptcy court must desist and proceed no further in the summary proceedings; a plenary suit is the only proper remedy. 2 W. Collier, Collier on Bankruptcy ¶ 23.07 [3] (14th ed. 1971).

The Ninth Circuit follows the above-articulated test. Suhl v. Bumb, 348 F. 2d 869 (9th Cir. 1965); Martoff v. Elliott, 326 F.2d 204 (9th Cir. 1963); Cadwell v. Elliott, 319 F.2d 598 (9th Cir. 1963); Bank of California v. McBride, 132 F.2d 769 (9th Cir. 1943); In 're California Paving Co., supra.

In Martoff v. Elliott, supra, the court, citing Harrison, supra, defined an adverse claim as "a contested matter of right involving some fair doubt and reasonable room for controversy."

In Suhl v. Bumb, supra, the court went into greater detail in analyzing the bankruptcy court's jurisdiction. It was said, 348 F.2d at 871:

> "The power of a bankruptcy court to resolve adverse claims concerning the assets of the bankrupt's estate is indeed a power of imposing magnitude. Since it results in depriving adverse claimants of a plenary suit, we must ever be cautious lest we permit its extension to a situation that should not permit summary disposition. Where the property in question is in the actual custody of the bankrupt's estate, summary jurisdiction is clearly authorized. Where the physical property is in the constructive possession of the bankrupt, e.g., where a salesman has a truck laden with the bankrupt's wares, we also have no difficulty in upholding the exercise of summary jurisdiction. When, however, the property in question is in the possession of third parties who purport to hold the property free of any claim of the bankrupt, we must carefully examine whether the expedited summary process is appropriate to the situation. This would seem particularly true in a situation, such as the present, where the property in question is a money claim against third parties rather than

a physical asset alleged to be part of the bankrupt's estate."

In In re California Paving Co., supra, a lease was transferred to a third party after the debtor's plan was confirmed but before it was consummated in a Chapter XI proceeding. The debtor corporation later filed a petition alleging the third party was merely holding it in trust for the corporation's benefit. There was conflicting evidence and the court held that the third party's adverse claim was supported by a lease on which he appeared as the sole lessee. The court stated: "[W]hether he held such legal title as trustee under an enforceable oral trust, as the debtor in possession alleged, was a question involving disputed facts as to which there was a conflict of evidence as well as a controversy in matter of law." At 912. The court went on to conclude "[s]ince the validity of petitioner's claim depended upon the determination of such disputed facts, it was 'therefore substantial, and not merely colorable; and its merits could only be adjudged in a plenary suit.'" At 912.

The Ninth Circuit Court in Cadwell v. Elliott, supra, in a brief opinion, concluded that because there was an allegation that an attorney breached his fiduciary duty to the bankrupt corporation, he was entitled to a plenary suit.

██ The unwholesome nature of a third party's actions does not deprive a third party of his right to a plenary action. Suhl v. Bumb, supra. Nor does the fact that property was transferred with the intent to hinder, delay or defraud the corporation's creditors. Infra. Thus, the correct question to be asked is whether there are reasonably disputed facts present which render the Gilberts' claims frivolous, barely colorable, or in bad faith. On the basis of the entire record, we conclude that the respondents' claims are substantial.

██ The trustee puts great weight in the fact that the Gilberts were officers at the time the liquidation took place. Although the actions of an offi-

cer or director of the bankrupt corporation must be scrutinized when the court determines whether property held by him is adverse or colorable, the fact that the third person is an officer of the corporation will not subject the assets he obtained from the corporation to the summary jurisdiction of the court when that officer's claim in the assets is adverse. Suhl v. Bumb, *supra*; Kyle v. Stewart, 360 F.2d 753 (5th Cir. 1966); 2 W. Collier, Collier on Bankruptcy ¶ 23.06[3], at 503–04 & n. 27 (14th ed. 1971), and cases cited. Where a minority stockholder, director, or officer possesses what was once corporate property under a claim that he rightfully received it from the corporation, not to hold as a stockholder, director, or officer, but as a third party in payment of services performed for or money lent to the corporation, he is entitled to a plenary suit. Kyle v. Stewart, *supra*; 2 W. Collier, Collier on Bankruptcy, ¶ 23.06[3], at 503–04 & n. 27 (14th ed. 1971).

As the Referee's order indicates, there are five categories of funds withdrawn by the Gilberts. Each category must be examined separately to determine the nature of respondents' claim on it.

 The first category of funds enumerated by the Referee is subject to a turnover order if the security agreements are clearly invalid or if the Gilberts' mode of foreclosing the agreements made their claim to the funds no more than colorable.

 In determining whether the Gilberts' claim to the funds in question is a mere pretext, a brief survey of the conflicting evidence and the Gilberts' explanation of the events must be made.

First, there is no question the Gilberts assert they loaned the money to the bankrupt corporation. The exhibits clearly show that a security agreement purports to give the Gilberts a floating lien on all of the bankrupt's inventory, fixtures and accounts receivable and provides that all sums advanced at a later date would also be secured by the lien. (Exhibits A–4 and A–7). The

Referee found, however, that since the notes and agreements were executed on August 20, 1969 for debts that were incurred in June and early August, they were invalid because they were executed for an antecedent debt.

It is the Gilberts' position that all the parties involved in the loan transaction agreed that security agreements would be given, and the reason that they were not executed on the day the money was transferred is that the bankrupt corporation's attorney was not available to draw them up. The Gilberts also assert that, in any event, $20,000 was advanced to the corporation by Frank Gilbert in November, after the signing of the notes and security agreements.

It is evident that there is a substantial question of fact and law present on that issue since the Gilberts' position is reasonable and the Referee must have weighed the testimony of the individuals involved in the transaction before he came to the conclusion that the security agreements constituted a transfer for an antecedent debt rather than a memorialization of a previous agreement which would make the transactions valid. *See In re* Nunnemaker Transportation Co., Inc., 456 F.2d 8 (9th Cir. 1972).

The Referee also felt that the note and security agreements were invalid because they were not properly authorized by the bankrupt corporation and its directors. The Referee refused to accept Respondents' Exhibit 10 (Transcript of Record 445 through 449), which were minutes authorizing the execution of the notes and security agreements. The minutes were prepared subsequently to the signing of the notes and agreements and they were signed by all the stockholders, officers and directors of the corporation at a later meeting. The Referee refused to admit the exhibit on the ground that these minutes were made up without the meeting actually having taken place.

 However, the status of directors of closed corporations acting informally without a duly convened meeting is not uncommon and not illegal without

some further showing. *In re* B–F Building Corp., 284 F.2d 679 (6th Cir. 1960); Brannon v. Ribicoff, 200 F. Supp. 697 (D.Mont.1961). The fact that the corporate record books contained no minutes of directors authorizing a security agreement is not significant. In re B–F Building Corp., *supra*. Thus, it would seem that this fact does not make the Gilberts' claim to the funds a mere pretense without some further factual showing.

In Conclusion of Law No. 3, the Referee found that the security agreements were invalid because they were given while the Gilberts were officers, directors or shareholders and in full control of the company. Since the finding indicates that legal control (transfer of stock) was not made until after the notes and agreements were signed, the Referee seems to be referring to the effective control which a large creditor in the Gilberts' position can exercise over a debtor in Kirchoff's position. The Referee indicates in this conclusion of law that the Gilberts somehow took advantage of their positions as officers in the corporation. This is consistent with the Referee's finding in Conclusion No. 2 in which he states that the agreements were given with the actual intent to defraud creditors.

The respondents persuasively argue, however, that they did not take advantage of their positions of control and that there has been no fraud on the creditors since the personal guarantee of Frank Gilbert was given to secure the corporation's future creditors and since the security agreements were filed on August 21, 1966, the day after they were signed, and the creditor's committee was notified of this fact. Also, the assets of the corporation were not diminished by the giving of a security agreement for new money being transferred into the corporation. Likewise the creditors knew the Gilberts had made an investment and should have fully investigated the corporation and the nature of the Gilberts' investment prior to signing the extension. No one claims

that there was deliberate misrepresentation on the part of Frank Gilbert but only that he was evasive, a fact that would be apparent to creditors prior to their consent.

▇ In any event, the fact that a transaction is fraudulent and voidable does not make the claim colorable and not adverse and substantial. Harrison v. Chamberlin, *supra*; Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1902); Autin v. Piske, 24 F.2d 626 (5th Cir. 1928); Brenner v. Sawyer, *supra*.

▇ The final question to be considered is whether the Gilberts' liquidation of the corporation, allegedly pursuant to the security agreement, made the Gilberts' claim to the funds derived therefrom colorable. The case cited by the Referee in his order and the trustee in his memo involved controlling officers and directors who undertook to liquidate all of corporate assets and to appropriate the proceeds to their own use. (Conclusion No. 3.) But these cases involved an undisputable intent on the part of the officers to obtain payment of unsecured claims to the prejudice of other unsecured creditors. That is not the case here. If the security agreements are valid, Gilbert would have recovered in any event. Frank Gilbert's conduct in liquidating the corporation as found by the Referee, without more, and which is not to be construed by this opinion as being approved by this Court, does not make his claim to the funds merely colorable.

The trustee argues that the Gilberts were acting as officers of the corporation when they liquidated rather than as creditors of the corporation, the former role making them in breach of their fiduciary duty to the corporation. The Gilberts assert that they were liquidating pursuant to their security agreements and not as officers of the corporation.

▇ The answer to this problem is substantially a legal one and apparently can't be immediately answered by refer-

ence to Arizona law. It is true that the Gilberts took advantage of their positions as corporation directors and officers, but the fact that they used the corporate premises, equipment, etc., is essentially not a prejudice to the corporation or the creditors since under the security agreement and A.R.S. § 44–3150 a secured party is entitled to reasonable expenses in taking and selling the security. The way the Gilberts liquidated the corporation was probably one of the cheapest methods that could be used.`

The above analysis is not set forth as the final one and is not intended to be an adjudication of the merits of this case. It is merely meant to point out that there are on the face of the record on review substantial legal and factual questions at stake in this case—the type of legal and factual questions that require a plenary action to be instituted and make the Referee's exercise of summary jurisdiction inappropriate.

■ Turning from the focus on the funds taken by the Gilberts to satisfy the loans made by them to the corporation (fund category no. 1) to the salary withdrawals made by Frank Gilbert (fund category no. 2), we find the result is the same. Frank Gilbert's withdrawals of the salary payments were made pursuant to corporate authorization and were supposedly made in payment for services rendered to the corporation. Frank Gilbert contends that part of the money he received was in payment for his service of guaranteeing the corporation's future debts to the corporation's creditors.[4] Despite the fact that it would be somewhat unusual to receive a salary for this type of service, he took that money pursuant to corporate authorization and under claim of right. He presented a prima facie case which entitles him to a plenary action. *In re*

Franklin Brewing Co., 263 F. 512 (2d Cir. 1920); 2 W. Collier, Collier on Bankruptcy ¶ 23.06[3], at 503–04 n. 27 (14th ed. 1971).

■ Both funds No. 3 and No. 5 fall into the same category because they are not funds the Gilberts have in their possession but are corporate funds they are accused of converting in violation of their fiduciary duty to the corporation. This is an action that sounds in tort and must be adjudicated in a plenary action. *See* Cadwell v. Elliott, *supra*; Bank of California v. McBride, *supra*.

■ The only remaining fund category is the $3,623.00 the Gilberts realized from cashing in one of Donald Kirchoff's life insurance contracts. This same life insurance contract was pledged by Donald Kirchoff to the corporation's creditors in his extension agreement. It was also pledged to the Gilberts in a private agreement (after its pledge to creditors) between the Kirchoffs and the Gilberts executed on August 20, 1969. The Gilberts assert they are entitled to the proceeds of the policy pursuant to the private agreement. Thus the issue presented is which group, the creditors or the Gilberts, is entitled to the funds. But again the legal effect of these conflicting agreements presents a substantial question.

■ There are two problems that run throughout the entire case. First, the Referee states that Frank Gilbert continued to liquidate the bankrupt's stock after the filing of the petition. Although there can be no question that the Referee can order the Gilberts to turn over money collected after the filing of the petiton (no matter what claim a third party may have on it) since the court has jurisdiction over all property in the debtor's possession at the time of bankruptcy,[5] the Referee did not deter-

---

4. Frank Gilbert guaranteed the corporation's payment of its trade accounts for approximately seven months. The corporation apparently purchased about $100,000 of merchandise a month. Frank Gilbert was entitled to $1,000 salary according to the minutes, and he apparently drew $5,900. Finding of Fact No. 41.

5. May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (1925); Lazarus v. Prentice, 234 U.S. 263, 34 S.Ct. 851, 58 L.Ed. 1305 (1913); Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1902).

mine what amounts were so collected. As a result this Court cannot sustain the Referee's turnover order as to those funds.

 Second, the Referee found that Frank Gilbert acted as agent for the community while some of the exhibits seem to indicate that Beverly Gilbert and Frank Gilbert were dealing with their sole and separate property. Thus a question of who should be directed to pay the amounts ordered is a substantial problem since they have made out a prima facie showing that they were dealing in sole and separate property. See Martoff v. Elliott, *supra*.

▇ In the Referee's Conclusion of Law No. 7, the Referee holds that the bankruptcy court has summary jurisdiction "on the further basis of consent", presumably for the reason that respondents filed a proof of claim with the bankruptcy court and thereby consented to the jurisdiction of the bankruptcy court. 2 W. Collier, Collier on Bankruptcy ¶ 23.08[6] (14th ed. 1971).

The Gilberts have objected to the bankruptcy court's jurisdiction at every stage. They assert that the only reason they filed a notice of claim with the Referee was to protect themselves from the tolling of the six-months' time limit for filing a claim should they receive an adverse decision on their objection to the bankruptcy court's jurisdiction that was taken under submission by the Referee. Under such circumstances, the filing of proof of claim is not deemed as consent to the bankruptcy court's jurisdiction. *In re* Eakin, 154 F.2d 717 (2d Cir. 1946); *In re* Industrial Associates, Inc., 155 F.Supp. 866 (E.D.Pa.1957); *In re* G. L. Odell Construction Co., 119 F. Supp. 578 (D.Colo.1954); 2 W. Collier, Collier on Bankruptcy ¶ 23.08[6] (14th ed. 1971).

Because of the Court's decision, we need not consider the Gilberts' petition for review of costs and the trustee's cross-petition for review. Accordingly,

It is ordered that the Referee's order under review made on December 3, 1971 is vacated and the Trustee is remitted to his rights to pursue a plenary action in this Court.