In re the FABRIC TREE, INC., Debtor.

MANGEL STORES CORPORATION,
Appellant,

v.

The FABRIC TREE, INC., Debtor and the Official Creditors' Committee of the Fabric Tree, Inc., Debtor, Appellees.

No. 1073, Docket 77–5003.

United States Court of Appeals,
Second Circuit.

Argued May 16, 1977.

Decided July 5, 1977.

---

Anthony J. D'Auria, New York City (Cole & Dietz, New York City, Homer Kripke, New York City, of counsel), for appellant.

Myron Trepper, New York City (Levin & Weintraub, New York City, Michael J. Crames, New York City, of counsel), for appellee, The Fabric Tree, Inc.

Harry A. Margolis, New York City (Hahn, Hessen, Margolis & Ryan, New York City, William R. Fabrizio and Alan E. Rabunski, New York City, of counsel), for appellee, The Official Creditors' Committee of The Fabric Tree, Inc.

Before MOORE, SMITH and GURFEIN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Mangel Stores Corporation ("Mangel"), appeals from an order of the United States District Court for the Southern District of New York, Henry F. Werker, *Judge,* affirming the order of Bankruptcy Judge Roy Babitt, acting in the absence and at the request of Bankruptcy Judge Stanley T. Lesser, which confirms the arrangement of the debtor in possession, The Fabric Tree, Inc. ("Fabric Tree"), pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* The only issue on appeal is the disposition of $600,000 which Mangel deposited in escrow. Mangel claims that (1) the bankruptcy court has no jurisdiction over the dispute involving the escrow funds, (2) the bankruptcy court erred in its interpretation of the escrow agreement between Mangel and the Fabric Tree Creditors' Committee ("the Committee"), and (3) the procedures followed by the bankruptcy court violated due process. We find no error and affirm.

### I.

On August 5, 1975 Fabric Tree filed a petition for an arrangement pursuant to Chapter XI. In the spring of 1976 Mangel began discussions with the Committee and the two owners of Fabric Tree. On May 4, 1976 three documents were signed: (1) an agreement between Mangel and the two owners of Fabric Tree ("purchase and sale agreement") in which Mangel agreed to purchase their stock and to employ them for at least one year, (2) an agreement between Mangel and Fabric Tree ("security agreement") in which Mangel agreed to lend at least $338,360.86 to Fabric Tree in return for a first lien and security interest upon certain assets of Fabric Tree, and (3) a letter of confirmation sent by Mangel to the Chairman of the Committee ("escrow agreement") in which Mangel agreed to turn over to the Chairman, as escrowee, a $600,000 certificate of deposit which the escrowee would release provided that (a) the bankruptcy court granted Mangel a first security interest in all of Fabric Tree's assets by May 10, 1976 and (b) the bankruptcy court confirmed a plan by July 15, 1976 requiring no more than $450,000 for the payment of allowable unsecured claims and $150,000 for priority and administrative expenses.

The bankruptcy court approved the security agreement on May 7, 1976 and gave Mangel a first security interest in all of Fabric Tree's assets prior to May 10, 1976.

On July 15, 1976 Judge Lesser held a hearing for which there is no transcript. Apparently "Fabric Tree, through its counsel advised the Court that it was not in a position to submit an Order of Confirmation because the debtor had apparently been unable to reduce general unsecured claims to such an amount as would necessitate a de-

posit of no more than $450,000 to pay 15% of them. In addition, administration and priority expenses exceeded $150,000 as at July 15, 1976." (Brief for Appellee, Fabric Tree, at 9–10). The parties are in dispute as to why the claims and expenses on July 15 were more than $600,000.

Following further negotiations, Fabric Tree on July 27 told Judge Lesser that it was now able to submit an order of confirmation which would be within the $600,000 ceiling of the Mangel commitment. Following an evidentiary hearing on July 27, Judge Lesser held, on July 30, 1976, that the July 15, 1976 deadline in the escrow agreement should not be enforced and that the escrow fund should be turned over to the disbursing agent if the plan was confirmed by August 4, 1976. Judge Babitt's order was entered on August 2, 1976. On October 22, 1976 Judge Lesser entered an order giving Mangel possession of Fabric Tree's assets and authorizing foreclosure and subsequent sale of Mangel's interest in these assets.

1. The purchase and sale agreement says, in pertinent part:
   WHEREAS, Mangels intends to make an offer (the "Offer") to the creditors in such proceedings to advance, loan or contribute to Fabric an amount sufficient to pay general unsecured creditors in the Proceedings 15% of their claims (up to a maximum of $450,-000) in cash upon confirmation, plus administrative expenses and priority claims (up to a maximum of $150,000).
   The security agreement says, in pertinent part:
   WHEREAS, Mangels intends to provide funds to Fabric to confirm a plan of arrangement in the Proceedings and in connection therewith has contracted to purchase all of the outstanding common stock of Fabric; and

   .   .   .   .   .

   In the event that the Bankruptcy Court confirms a plan of arrangement based upon the offer of Mangels to fund such a plan, Mangels will lend to Fabric up to $600,000 on the date when the order of confirmation of such a plan becomes a final and non-appealable order within the meaning of Bankruptcy Rule 803.

2. Section 11(a)(7) says, in pertinent part:
   The   .   .   .   courts of bankruptcy   .   . are hereby invested   .   .   .   with such jurisdiction at law and in equity as will enable

## II.

Based on the language of the three agreements,[1] we think all parties considered them to be part of an overall plan involving the debtor. Having consented in May, 1976 to the bankruptcy court's jurisdiction when it approved the security agreement and gave Mangel a first security interest in all of Fabric Tree's assets, Mangel cannot in July, 1976 escape the jurisdiction of the bankruptcy court, existing pursuant to 11 U.S.C. § 11(a)(7),[2] in its dispute with the Committee over the escrow agreement. *In Re Sherman Plastering Corp.*, 340 F.2d 915 (2d Cir. 1965). The cases relied upon by Mangel are all distinguishable. One involves a diversity suit;[3] several involve a dispute over an agreement made before the debtor had filed its Chapter XI or other bankruptcy petition,[4] and one involves a petition for an accounting of the source and distribution of funds deposited with a Chapter XI receiver.[5]

We turn now to the merits of the dispute. At the July 27 hearing Echikson, one of Fabric Tree's two shareholders, testified that the purpose of the July 15 deadline

them to exercise original jurisdiction   .   . to   .   .   .   cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto   .   .   ..

3. *Baxter v. United Forest Products Co.*, 406 F.2d 1120 (8th Cir.), cert. denied, 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42 (1969).

4. *Mid-Jersey National Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640 (3d Cir. 1975); *Bayview Estates, Inc. v. Bayview Estates Mobile Home Owners Ass'n*, 508 F.2d 405 (6th Cir. 1974); *Saper v. West*, 263 F.2d 422, 427 (2d Cir.), cert. denied, 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1532 (1959); *In re 671 Prospect Avenue Holding Corp.*, 118 F.2d 453 (2d Cir.), cert. denied sub nom., *Newfield v. East River Savings Bank*, 314 U.S. 642, 62 S.Ct. 83, 86 L.Ed. 515 (1941); *In re Bergstrom*, 1 F.2d 288 (7th Cir. 1924); *In re Kirchoff Frozen Foods, Inc.*, 375 F.Supp. 156 (D.Ariz.1972), aff'd 496 F.2d 84 (9th Cir. 1974); *In re H. L. Gentry Construction Co.*, 200 F.Supp. 546 (E.D.Mich.1961), aff'd, 314 F.2d 945 (6th Cir. 1962).

5. *United States v. Neiwirth*, 370 F.Supp. 929 (D.N.J.1974).

was to prod the Committee into accepting the plan. Nathan Hoffman, Mangel's Vice President of Finance, testified on direct examination that Mangel would have to lend Fabric Tree $1.5 million if there were confirmation on August 1 and only $1 million if there had been confirmation on July 15. He also testified that orders for fall merchandise for Fabric Tree "would have to be placed by July 15th or July 20th." (Appendix, at 145). Hoffman also testified, in response to a question from Judge Lesser, that he wanted a July 15 deadline in order to reduce uncertainty.[6] Hoffman also testified that the delay in confirmation involved a "continuing loss" of $20,000–$30,000. Joseph Lamm, Mangel's President, testified on cross-examination "there is nothing magical [about the July 15 deadline]. We originally tried to get a date of June 30th by virtue of the fact, as Mr. Hoffman had pointed out, the big push comes in the month of July, and if you don't get your inventory in July, you can blow, if you may use that word, the entire fall season." (Appendix, at 180).

■ To the extent there is conflicting testimony, Judge Lesser's findings,[7] based on his observation of the witnesses, are entitled to great weight. He concluded,

6. THE JUDGE: I want to ask you this question openly. I understand your testimony to be that the concern of Mangel's in making commitments here and in setting a deadline is what would have been their exposure and their possible lack of adequate security if there was not ultimately confirmation?

THE WITNESS: Yes.

.      .      .      .      .

THE JUDGE: I want something clear here. I did not intend to cover the July 15th date. It was my understanding that was what his testimony was previously where he spoke about the dates in terms of what Mangel's concern was, if there was no confirmation, and it seemed to me that everyone was talking about something else here. That is the only reason that I brought it up.

Q. Mr. Hoffman, in your own mind as chief financial officer of Mangel's what, from a business point of view, was the significance of a confirmed plan on July 15th as opposed to August 1st?

A. I can only tell you my concern and what I have added to the conversations with Mr. Harris.

that time was not strictly of the essence in the performance of the condition that an order of confirmation be entered on or before July 15, 1976. . . . I find that the purpose of the July 15th date when formulated was two-fold. First, to fix a deadline in the mind of the creditors thereby galvanizing the creditors committee into action to procure requisite acceptance at an early date. The second is somewhat related to the first, which is to give Mangels warning in the ability to protect itself at an early date as practicable if confirmation was not forthcoming. . . . There is no doubt that by July 15th Mangels should have known that confirmation was not in jeopardy. The plan had been accepted by the creditors and the court showed a willingness to confirm. (Appendix, at 292, 294).

These findings are not clearly erroneous, and we therefore accept them. Rule 810 of the Rules of Bankruptcy Procedure. *In re Ira Haupt & Co.*, 424 F.2d 722, 723 (2d Cir. 1970).

■ Mangel claims its right to due process was violated because the July 27 hearing occurred before a complaint was served, an answer filed, and discovery completed.

He may have other reasons and maybe Mr. Lamm had other reasons for the July 15th date.

I was looking for the earliest possible moment in time. It could have been June 30th, which I would have preferred. They said it couldn't be for one reason or another.

THE JUDGE: You wanted the least amount of uncertainty?

THE WITNESS: Right. I am speaking about what I contributed to the conversation with respect to the negotiations.

THE JUDGE: Anything else, gentlemen?

Q. What additional exposure, if any, has Mangel's entailed by virtue of a July 15th to July 27th delay with respect to the confirmation?

A. Well, several things; one, we have had continuing losses. I would say that we had continuing loss of twenty to thirty thousand dollars, at least. [Appendix, at 160–162].

7. As Judge Lesser did not prepare a written opinion, we rely upon the corrected transcript of the July 30, 1976 hearing.

Although Mangel's counsel challenged on July 27 the bankruptcy court's jurisdiction to conduct a hearing on the escrow fund dispute, Mangel's counsel did not make any specific claims that he was unprepared to proceed with the hearing. He told Judge Lesser "If there is a dispute [about the July 15 deadline], your Honor, we can put testimony on the stand" (Appendix, at 48) and "I am willing to accept your tentative decision that you do have jurisdiction and proceed, so long as it is well understood and acknowledged by your Honor that by not taking an interlocutory appeal on the question of jurisdiction and going forward with the hearing, we have not waived any rights whatsoever." (Appendix, at 53).

Mangel does not indicate what additional witnesses it might have called, what additional documents it might have discovered, or what alternative defenses it might have developed if it had had more time to prepare for the hearing.

There was no violation of Mangel's right to due process.

Affirmed.