MULLANPHY SAVINGS BANK *v.* R. B. LYLE *et al.*

FRAUDULENT CONVEYANCE. *Creditors of vendor and vendee.* Where a fund arising from property fraudulently assigned has been brought into court at the instance of creditors of the vendor, creditors of the fraudulent vendee will not be permitted to have satisfaction of their claims until all the creditors of the vendor who have come in (although after the creditors of the fraudulent vendee) are fully satisfied.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

H. H. TAYLOR for complainant.

W. M. BAXTER and LEWIS TILLMAN, Jr., for defendant.

TURNEY, J., delivered the opinion of the court.

Complainant is the owner of a note for $4,500, executed by defendant Martin O'Neal on the 20th of June, 1876, payable at thirty days.

Defendants Boyle, Roach, Conden & Son, contractors on the Cincinnati Southern Railroad, sublet to Martin O'Neal sections 195 and 196 in Rhea county. Being pressed by creditors, O'Neal made a fraudulent sale of his contract, estimates, tools, carts, stock, etc., to defendant Lyle, for the pretended consideration of five thousand dollars. Several attachment suits were brought by the creditors of O'Neal against him, Lyle and Boyle, Roach, Conden & Son, attacking the sale by O'Neal for fraud, attaching the property and garnisheeing Boyle, Roach, Conden & Son.

Thereupon, Boyle, Roach, Conden & Son filed their bill of interpleader against Lyle, O'Neal and the various attaching creditors, and ask to be permitted to pay the amount due from them, on account of the work done by O'Neal, into court, that the court may determine to whom it belongs, and that they be relieved, etc. They paid the money into court.

Afterwards, and on August 11, 1877, Morris & Chase, of Chattanooga, filed their attachment bill against Lyle, charging that they were his creditors to the amount of $346.31. They refer to the bill of interpleader, and charge that O'Neal, after doing about $2,000 of work, made an assignment, etc., to Lyle

for the consideration of $5,000; that several creditors of O'Neal had filed bills attacking the assignment for fraud, asking writs of attachment, etc. An attachment issued, and was returned endorsed: "Levied this attachment by serving a garnishment on W. J. Conden, one of the firm of Boyle, Roach, Conden & Son, a copy of which is herewith returned; and also levied this attachment on any funds of said Lyle that may have been paid into the hands of the clerk and master of this court by Boyle, Roach, Conden & Son, and notified the clerk and master of the levy."

Lyle failed to answer, and judgment *pro confesso* was taken against him, and it was decreed that "complainant, by virtue of said attachment and garnishment has a lien upon the interest of said Lyle in the fund in, and ordered to be paid into Court, in the Boyle, Roach, Conden & Son case," and as soon as that interest should be ascertained the clerk was directed to pay, etc.

On the 4th of October, 1877, Morris & Chase filed a petition asking that their debt be paid from the funds in the master's hands. The order was made on the execution of a refunding bond.

On the same day, Mullanphy Savings Bank filed its bill against O'Neal, Lyle and others, attaching the fund. In May, 1879, the bank amended its bill, making Morris & Chase parties, and asking to have its debt against O'Neal preferred to that of Morris & Chase against Lyle.

The sale by O'Neal to Lyle was declared fraudulent. That decree is not controverted. It follows
28—VOL. 7.

that the money paid into court was the estate of O'Neal and subject to his debts.

At the time it was attached by Morris & Chase as the property of Lyle, it was under the direction of the court, and kept in its custody for the determination of the question of ownership. Upon that determination depended the rights of the respective creditors of O'Neal and Lyle. Lyle's creditors can occupy no higher ground than he does; by their attachments they were substituted to his place. If he had no right to the funds under his pretended purchase, they took none. It being decided that his pretended purchase was void, O'Neal had parted with nothing by his pretended sale, and the debt due to him stood as though there had been no transfer by him. The sale, though fraudulent as to the creditors of O'Neal, being good between the parties, will entitle Morris & Chase to any surplus remaining after O'Neal's creditors are paid.

Affirmed.