## In re BERKOWITZ.

(District Court, D. New Jersey. April, 1908.)

1. BANKRUPTCY (§ 175*)—RIGHT OF TRUSTEE AS TO PROPERTY FRAUDULENTLY TRANSFERRED.

Where it is shown that a bankrupt, while insolvent, with relatives organized a corporation to which he conveyed his property, and which he conducted solely for his own benefit, for the evident purpose of placing such property beyond the reach of his creditors, his trustee may properly be ordered to seize such property as assets of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. § 175.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 104*) — ADMINISTRATION OF ESTATES — JURISDICTION OF COURTS—RESTRAINING SALE OF PROPERTY IN DISPUTE.

An order of a referee, restraining a bankrupt and a corporation of which he was manager and to which he had transferred his property from selling its property pending a determination of its ownership, confirmed, where it appeared that the parties agreed to the hearing of the motion therefor before the referee in substantial compliance with bankruptcy rule 21 of the court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 156, 157; Dec. Dig. § 104.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

In the matter of Leon M. Berkowitz, bankrupt. On review of orders of referee. Orders confirmed.

Julius Henry Cohen and Henry F. Wolff, for creditors.
Louis Hood, for bankrupt.

LANNING, District Judge. The Berkowitz Tailoring Company was incorporated shortly before the petition in bankruptcy was filed. The bankrupt was then insolvent, and conveyed all his assets to the company for an alleged consideration of $1,500. The incorporators were the bankrupt and three of his brothers-in-law. These brothers-in-law seem to have paid into the corporation, for its capital stock, the sum of $2,000, and the bankrupt $25. The brothers-in-law made no inquiry concerning the quantity or value of the property transferred to the company by the bankrupt, and have nothing whatever to do with the business of the company. If they did in fact pay $2,000 into the treasury of the corporation, it is clear that their purpose was not to invest that sum in the business on their own account, but to aid the bankrupt in business that was to be treated by him as his own, and not as a business in which they had any interest whatever. The corporation was intended to operate as a cloak to shield the property from seizure by the bankrupt's creditors. Obviously it was a fraud upon the creditors of the bankrupt. The referee's orders of September 26 and 27, 1907, directing the receiver to seize the property in possession of the company, were amply sustained by the proofs, and will be confirmed.

The order of February 13, 1908, will also be confirmed. After the taking of much testimony subsequent to the orders of September 26 and 27, 1907, the referee, on the petition of the trustee, granted a rule, dated January 18, and returnable January 27, 1908, requiring the bankrupt to show cause why he should not turn over to the trustee moneys and property not accounted for by the bankrupt. For some reason which I do not find disclosed in the record the bankrupt secured an extension of two weeks after January 27th in which to file his answer to the petition. He filed such answer on February 11th. The petition of the trustee, filed as above stated on January 18th, showed amongst other things that the bankrupt mailed to Julius Magnus a statement of the assets and liabilities of the Berkowitz Tailoring Company, showing its assets to be $32,837.30 (including over $18,000 of

merchandise and over $4,600 of accounts receivable), and liabilities for capital stock to the amount of $25,000. This statement was dated April 5, 1907, only about three weeks after the company was incorporated. The proofs seem to show that payments for capital stock had amounted only to $2,025, and that the pretended consideration for merchandise conveyed by the bankrupt to the company was only $1,-500. Where the company got its immense amount of assets is not satisfactorily explained. The transaction bears the earmarks of palpable fraud. The strong probability is that these assets belonged to the bankrupt. In this condition of affairs, and while the rule granted on January 18th was still pending, the Berkowitz Tailoring Company advertised for sale at public auction "the entire stock of imported woolens, slightly damaged by water, together with all the fine fixtures in mission," of the company on February 6th. On February 5th the trustee filed his petition with the referee, setting forth these facts and praying for a rule requiring the bankrupt, the company, and the auctioneer to show cause why the proposed sale should not be restrained "until the final determination of the questions raised in the petitions aforesaid." A rule was thereupon granted, with an ad interim stay of sale by auction, returnable on February 11th. On February 13th the referee made his order restraining the sale, which is now the subject of review.

The purpose of this order was to prevent a sale of the property in possession of the company until its ownership could be determined. The company has the option, under the order, of giving its indemnifying bond, and thus being free to sell the property. It is true that bankruptcy rule 21 of this court, set forth in the Siebert Case (D. C.) 13 Am. Bankr. Rep. 348, 133 Fed. 781, gives to a referee power only, in the first instance, to grant, upon an application for an injunction, a rule to show cause with an ad interim stay, and that the rule seems to contemplate, in the absence of an agreement by the parties in interest to argue the rule before the referee, that the argument shall be before a judge of the court. But in this case an agreement to argue the rule before the referee was in effect made. The order of February 13, 1908, recites that counsel for all parties in interest appeared before the referee and argued the rule. Whether they filed with the referee a written stipulation to that effect, as provided by rule 21, I am not informed. If they did not, it is too late now to object on that ground. I am satisfied that the order was properly made, and it will be confirmed.

A writ of ne exeat was issued against the bankrupt on January 3, 1908. See 173 Fed. 1012. It provides that the bankrupt shall not depart from New Jersey without leave of court. Temporary leave has heretofore been given on two separate occasions for him to go to the city of New York on business trips. Similar orders may be given in the future, if deemed proper. The present motion to vacate or modify the writ will be denied. The examination into the bankrupt's affairs is not yet completed, and the bankrupt must remain subject to the jurisdiction and power of this court, at least for the present.