**In re Vernon Carey HAMMETT, Jr., Bankrupt.**

**Jeffrey A. LEVINGSTON, Trustee and Lonoke Production Credit Association, Plaintiffs,**

**v.**

**Vernon C. HAMMETT, Jr., Annette Fore Hammett, Dan F. Hammett, Avondale Arms Apartments, Inc., Anne S. Hammett, and Bank Sales Department, Inc., Defendants.**

**Bankruptcy No. S82–40206.
Adv. No. 82–4395.**

United States Bankruptcy Court,
N.D. Mississippi,
Greenville Division.

June 4, 1984.

William Drew, Lake Village, Ark., and Walter B. Swain, Swain & Swain, Greenville, Miss., for Vernon C. Hammett, Jr. et al.

Hainon A. Miller, Greenville, Miss., for Jeffrey A. Levingston and Lonoke PCA.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

This adversary proceeding came on for trial on the filing of the amended complaint by the Plaintiffs, Jeffrey A. Levingston, Trustee, and Lonoke Production Credit Association; all issues being joined by the filing of separate answers by all named Defendants, Vernon C. Hammett, Jr., Annette Fore Hammett, Dan F. Hammett, Anne S. Hammett, Avondale Arms Apartments, Inc., and Bank Sales Department, Inc.; the Plaintiffs and the Defendants being represented in Open Court by their respective attorneys of record; on proof by stipulations, documentary evidence, and testimony before the Court; and the Court having heard and considered same, finds as follows, to-wit:

### I.

█ As to the issues raised by the Defendants concerning the untimely modification of the judgment, dated June 8, 1981, nunc pro tunc December 30, 1980, of the Chancery Court of Pulaski County, Arkansas, as well as, the affirmative defense asserted by the Defendants that the Plaintiffs' amended complaint is barred by the provisions of § 15–1–49, Mississippi Code of 1972, as amended, being the six year general statute of limitations, this Court confirms its Order dated January 9, 1984, which overruled the Defendants' motion for summary judgment, said Order is incorporated for the purposes of this Opinion by reference the same as if fully copied verbatim herein. More particularly, this Court holds that in addition to the provisions of Rule 15(c), Federal Rules of Civil Procedure, which permit the filing of the amended complaint to relate back to the time of filing of the initial complaint, that the provisions of § 15–1–67, Mississippi Code of 1972, as amended, also prohibit this cause of action from being barred by the six year statute of limitations. The revised allegations were timely plead after discovery which was conducted with reasonable diligence by the Plaintiffs.

This bankruptcy was filed by Vernon C. Hammett, Jr., on September 14, 1982, which was within the six year period of the general statute of limitations, commencing hypothetically on January 26, 1977. The interaction of 11 U.S.C. § 544 and § 546(a) permits the Plaintiff Trustee, when joined by the "triggering creditor", Lonoke Production Credit Association, to utilize consecutively the time period provided in § 15–1–49, if still effective on the date of the bankruptcy filing, in addition to the time period provided in § 546(a). As a consequence, coupled with the other reasons set out above, the amended complaint was timely filed by the Plaintiffs.

## II.

The Court finds that Avondale Arms Apartments, Inc., hereinafter referred to as Avondale Arms, was incorporated on January 21, 1977. The incorporators were Vernon C. Hammett, Jr., and Annette F. Hammett; the officers and directors from incorporation until the present time were and are Vernon C. Hammett, Jr. (President and Director), Annette F. Hammett (Secretary-Treasurer and Director), and Dan F. Hammett (Vice President and Director). Initially two hundred shares of the capital stock were issued to Annette Fore Hammett and two hundred shares to Vernon C. Hammett, Jr., by virtue of certificates dated January 26, 1977. The two hundred shares issued to Vernon C. Hammett, Jr., were transferred, as evidenced by the corporate stock transfer ledger, to Dan F. Hammett (100 shares) and Anne S. Hammett (100 shares), effective January 29, 1977, but with the two certificates being dated January 28, 1977. Contemporaneously with the stock transfer, i.e., January 29, 1977, a voting trust agreement and three related certificates were executed by Annette Fore Hammett, Dan F. Hammett, and Anne S. Hammett to Vernon C. Hammett, Jr., whereby Vernon C. Hammett, Jr., was given the complete and exclusive authority to vote all issued and outstanding shares of stock of Avondale Arms.

Prior to the incorporation of Avondale Arms, Vernon C. Hammett, Jr., who owned certain real property on which the Avondale Arms apartments were being constructed, had entered into two loan transactions with First National Bank of Greenville in the sums of $115,000.00 and $30,000.00, secured by deeds of trust dated respectively on October 19, 1976, (Defendants' Exhibit 27), and January 7, 1977, (Defendants' Exhibit 26). Vernon C. Hammett, Jr., conveyed this same property to Avondale Arms Apartments, Inc., by a warranty deed dated January 26, 1977. There is no mention in this instrument of the two deeds of trust in favor of First National Bank of Greenville. Subsequently, however, Avondale Arms entered into a loan transaction with Washington Federal Savings and Loan Association, Greenville, Mississippi, in the original principal sum of $142,500.00 (Defendants' Exhibit 28), the proceeds of which were utilized to satisfy the two outstanding loans in favor of First National Bank of Greenville. From the proof presented at the trial of this case, the Court is unable to determine whether the satisfaction of the two debts existing in favor of First National Bank of Greenville was adequate consideration for the conveyance of the property by Vernon C. Hammett, Jr. to the corporation. Therefore, absent evidence to the contrary, the Court must presume that this conveyance was, in fact, an "arms length" transaction.

The Court notes that although the circumstances surrounding the ultimate issuance of the Avondale Arms Apartments, Inc., corporate stock to Annette Fore Hammett, Dan F. Hammett, and Anne S. Hammett, are "most unusual", the following factors must be considered:

1. Annette Fore Hammett, Dan F. Hammett, and Anne S. Hammett all testified that each paid for his or her shares of corporate stock although no payment records, i.e., checks, cancelled certificates of deposit, or bank transfer memoranda were produced.

2. Each of the aforementioned individuals had funds available to pay for the cor-

porate stock at least at a time one year prior to acquisition.

3. At the time of the stock issuance, the value of the stock was not overly significant. The corporation was deeded the real property on which the Avondale Arms apartments were being constructed and at the same time ostensibly assumed the liability for the two debts owed to First National Bank of Greenville, totaling $145,-000.00 as described hereinabove. These debts, were subsequently satisfied by the corporation through the loan with Washington Federal Savings and Loan Association.

▪ The Plaintiffs have alleged that the issuance of the corporate shares was fraudulent. Under the prevailing state of the law, the Plaintiffs must prove such fraud by clear and convincing evidence. The factual proof is sufficient to raise an element of doubt and suspicion, but such proof does not rise to the level necessary to set aside the issuance and subsequent transfer of the corporate stock of Avondale Arms as fraudulent. Consequently, as to this issue, the Plaintiffs amended complaint is without merit and should be dismissed.

### III.

On January 29, 1977, Vernon C. Hammett, Jr., executed four option agreements to Avondale Arms Apartments, Inc., all of which are discussed in detail hereinbelow, each for the recited consideration of Ten Dollars ($10.00) and other good and valuable consideration. According to the testimony adduced at the trial, the execution and preparation of these option agreements was undertaken in an effort to restructure Mr. Hammett's asset ownership for inheritance tax purposes since he was thought to be in a deteriorating or terminal state of health. In effect, these instruments were drafted to substantially "better" his estate's anticipated liability position as to the payment of such taxes. Since Mr. Hammett fortunately survived this illness, the scrutiny of these transactions by the Internal Revenue Service has not become necessary.

On July 31, 1981, each of the options was exercised by Avondale Arms. According to the minutes of the corporation, and the testimony of Dan F. Hammett, the specific purpose of exercising the options was to avoid the obligation of Vernon C. Hammett, Jr., to pay the judgment existing in favor of the Plaintiff, Lonoke Production Credit Association.

On the same date that the options were exercised by Avondale Arms, Vernon C. Hammett, Jr., conveyed as discussed hereinbelow, his undivided one-half interest in his homestead to his wife, the Defendant, Annette Fore Hammett, thereby divesting himself of all real property ownership.

The options and related conveyances are discussed more particularly as follows:

A. *Glenbar Plantation—approximately 500 acres of agricultural real property located in Washington County, Mississippi:*

Effective December 31, 1976, this property was encumbered by a mortgage in favor of Federal Land Bank of New Orleans in the principal sum of $339,500.00. Initially, there was a residential structure located on this property at the time of the execution of the option, but the dwelling and curtilage was sold to Roy Thedford on May 4, 1979, for the price of $40,900.00, by Vernon C. Hammett, Jr., during the option term without the consent of Avondale Arms. The proceeds of the sale were paid directly to Mr. Hammett. Also, subsequent to the execution of the option, Mr. Hammett, without the apparent consent of Avondale Arms, satisfied the indebtedness to Federal Land Bank of New Orleans by the negotiation of a $350,000.00 loan with Prudential Insurance Company which was consummated in May, 1977. As a part of this loan transaction, a new deed of trust, encumbering this property, was executed by Mr. Hammett. The property purchased by Mr. Thedford was released from the lien of the Prudential Insurance Company mortgage.

The option agreement between Mr. Hammett and Avondale Arms set forth a purchase price in the amount of $375,000.00,

payable in 300 monthly installments, including interest at the rate of 6% per annum, in the amount of $2,416.31. Avondale Arms acquired this property on July 31, 1981, less the Thedford sale, by the execution of a promissory note in the sum of $375,000.00, payable according to the option terms. This promissory note which was payable to Vernon C. Hammett, Jr., was subsequently assigned to Mrs. Annette Hammett for no apparent consideration.

On December 21, 1982, as evidenced by a memorandum of installment contract, Avondale Arms agreed to convey this property to Bank Sales Department, Inc., an Iowa corporation, whose principal officer was E.W. Youell, Jr., the brother-in-law of Vernon C. Hammett, Jr. The purchase price was reflected as $890,000.00, payable as follows: $40,000.00 was to be paid on January 3, 1983; $110,000,00 was to be paid on January 15, 1983; $100,000.00 was to be paid on January 15, 1984; the promissory note of Avondale Arms to Vernon C. Hammett, Jr., in the remaining sum of $343,000.00 was to be assumed; and the balance of the purchase price was to be paid over a period of ten years.

There were various appraisals and evaluations of this property which are described as follows:

1. Wade Wineman, a real estate appraiser employed by the Plaintiffs, evaluated the property as of January 29, 1977, including the residence subsequently sold to Roy Thedford, in the sum of $730,000.00. He then evaluated the property, effective July 31, 1981, without the residence, in the sum of $1,082,000.00. ·

2. Vernon C. Hammett, Jr., evaluated this property effective December 31, 1976, as evidenced by his personal financial statement (Plaintiffs' Exhibit "46") in the sum of $750,000.00.

3. William Henson, a representative of Prudential Insurance Company called to testify by the Defendants, indicated that he evaluated the property as of March, 1977, utilizing the market approach in the sum of $544,000.00, representing a price of $1,088.00 per acre, which excluded the residence. Thereafter, he valued the residence in the sum of $30,000.00; so consequently, his total appraisal using the market approach was $574,000.00. It is noted that the residence, as stated hereinabove, was sold approximately two years later for a price in excess of $10,900.00, more than Mr. Henson's·appraisal. Mr. Henson, utilizing the income approach, based on a capitalization rate of 8¾%, valued the property at $615,000.00.

From a comparison to even the lowest appraisal, the option price was grossly understated.

B. *One hundred acres of real property located and situated in Perry County, Mississippi:*

Although this property apparently was unencumbered at the time of the trial of this case, in the Hammett financial statement, dated December 31, 1976, an indebtedness applicable to the property was reflected as $3,349.19.

The option agreement executed by Mr. Hammett to Avondale Arms called for a purchase price in the sum of $20,000.00, payable in 300 monthly installments, including interest at the rate of 6% per annum, in the amount of $128.87. On July 31, 1981, Mr. Hammett conveyed this property to Avondale Arms and in return received a promissory note from the corporation in the sum of $20,000.00, payable as designated in the option agreement. This promissory note was subsequently assigned to Mrs. Annette Hammett for no apparent consideration. .

The appraisals or evaluations of this property are reflected as follows:

1. Bodie J. Beard, a real estate appraiser employed by the Plaintiffs, valued the property as of January 29, 1977, in the sum of $45,000.00, based on the rate of $450.00 per acre, and as of July 31, 1981, in the sum of $85,000.00, based on a rate of $850.00 per acre.

2. Mr. Hammett evaluated this property on his financial statement, dated December 31, 1976, in the sum of $60,000.00.

Inasmuch as the Defendants offered no other appraisal testimony regarding this property, considering the lowest appraisal at the time the option was executed, the option price was grossly understated.

### C. Beaucamp Street rental property, Greenville, Mississippi:

This property is a residential dwelling being rented for the sum of $350.00 per month. On December 31, 1976, as reflected in the Hammett financial statement, there was an indebtedness encumbering this property in favor of Wortman and Mann in the sum of $8,608.15. This indebtedness has been practically satisfied by Avondale Arms since the execution of the option agreement by payments totaling the sum of $6,920.00.

Concerning this property, the option agreement sets forth a purchase price in the sum of $17,500.00, payable in 300 monthly installments, including interest at the rate of 6% per annum, in the sum of $112.76. The property was conveyed by Mr. Hammett to Avondale Arms on July 31, 1981, and in consideration, Mr. Hammett received a $17,500.00 promissory note from the corporation, payable according to the terms of the option agreement. This note, like the others, was assigned to Mrs. Annette Hammett for no apparent consideration.

The only appraisal information, discernible to the Court, is reflected in the testimony of John W. Young, a real estate appraiser offered by the Plaintiffs. Mr. Young testified that as of January, 1977, utilizing the market approach, that the property had a value of $22,500.00, and utilizing the cost approach, a value of $25,700.00. As of July, 1981, Mr. Young appraised the property in the sum of $32,300.00. Although the market approach appraisal only exceeds the option purchase price by $5,000.00, the value of the property at the time it was conveyed by Mr. Hammett to Avondale Arms grossly exceeds the actual consideration. This also must be considered in light of the fact that Mr. Hammett apparently received no payment or consideration from Avondale Arms when furnishing the five year option.

### D. Homestead property, 1336 Martha Street, Greenville, Mississippi:

Although there was no option concerning this property, Mr. Hammett conveyed his undivided one-half interest in the property to his wife on July 31, 1981. There was a $30,000.00, indebtedness secured by this property which fully matured in April, 1977, in favor of E.W. Youell, Jr., and Jane Bell Youell. As mentioned above, Mr. Youell is the brother-in-law of Vernon C. Hammett, Jr. According to the testimony of Mrs. Hammett, this indebtedness was fully paid in 1984.

The Court notes that Mr. Hammett filed this bankruptcy on September 14, 1982, and claimed the federal exemptions provided in 11 U.S.C. § 522, as opposed to the exemptions which could be claimed under the laws of the State of Mississippi.

Mr. Young, the real estate appraiser, evaluated this property as of July 31, 1981, in the sum of $81,000.00, utilizing the market approach. He indicated that the property was "over built" for the area in which it was located, and that the cost approach would produce a higher appraisal.

Although this transaction appears to be yet another cog in the overall scenario, considering that Mr. Hammett owned an undivided one-half interest, that he would be entitled to claim credit for at least one-half of the homestead exemption at the time of the transfer, and that he was responsible for at least one-half, if not all of the related indebtedness, there appears to be little equity in this property in favor of Mr. Hammett upon which a judgment creditor could attempt to levy execution. This is especially true, realistically, in view of the fact that Mrs. Hammett's ownership and personal homestead rights could not be disturbed without considerable difficulty and expense.

### E. Undivided one-fourth remainder interest, subject to a life estate of Mrs. Alice F. Hammett, in approximately 540 acres, Bolivar County, Mississippi:

Mr. Hammett testified that he had executed a promissory note to his mother, Mrs.

Alice Hammett, in the sum of $40,000.00, which was allegedly secured by his undivided remainder interest in this property. The option agreement provided a purchase price for the property in the sum of $37,550.00, payable in 300 monthly installments, including interest at the rate of 6% per annum, in the sum of $241.97. On July 31, 1981, Avondale Arms acquired Mr. Hammett's interest in the property by the execution of a promissory note to Mr. Hammett in the sum of $37,550.00, payable according to the terms of the option. When this option was exercised, Avondale Arms allegedly assumed the debt of Mr. Hammett to his mother; but at the same time, Mr. Hammett assigned the Avondale Arms promissory note to his mother in the equivalent amount of his own indebtedness to her. Presumably, the corporation is not paying Mr. Hammett's mother on both notes which obviously are duplicate obligations.

There is apparently a legal dispute as to 40 acres of this property, so Mr. Wineman, mentioned hereinabove, in his appraisal as of January 29, 1977, utilizing the market approach valued the property as being between $711,000.00 and $748,500.00. If the 40 acres were added, Mr. Wineman's appraisal would reflect the value as being between $747,000.00 and $784,500.00. As of July 31, 1981, utilizing the market approach, Mr. Wineman appraised the property without the 40 acres as being worth between $1,045,000.00 and $1,082,000.00. For this same date including the acres, Mr. Wineman appraised the property as being worth between $1,113,000.00 and $1,150,000.00. In their brief, the Plaintiffs mathematically calculated the value of Mr. Hammett's interest in the property, based on Mr. Wineman's appraisals and the life expectancy of Mr. Hammett's mother. As of January, 1978, Mr. Hammett's actual interest was computed to be between $124,124.16, and $130,506.50. As of July, 1981, Mr. Hammett's interest was computed to be between $198,664.95 and $211,592.43.

Accepting the calculations provided by the Plaintiffs, the option price was grossly understated.

The Plaintiff Trustee seeks to set aside each of these options and the related conveyances pursuant to 11 U.S.C. § 544 and § 548.

§ 544 imports state law into the Bankruptcy Code, e.g., § 15-3-3, Miss.Code of 1972, as amended. It makes voidable at the suit of the Trustee any transfer that a judgment creditor or a bona fide purchaser could challenge. It gives the Trustee in Bankruptcy "every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by equitable or legal proceedings." 4 Collier on Bankruptcy § 544.02, p. 544-5. Also, *In Re: Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D.Miss.—1932).

§ 548 regarding fraudulent transfers provides in part as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believe that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

The pertinent Mississippi statute prohibiting fraudulent conveyances is § 15-3-3, Mississippi Code of 1972, as amended, which provides in part as follows:

"Every gift, grant, or conveyance of lands, tenements, or hereditaments, goods or chattels, or of any rent, common or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, or execution had or made and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures, or to defraud or deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken only as against the person or persons, his, her, or their heirs, successors, executors, administrators, or assigns, and every one of them whose debts, suits, demands, estates, or interests by such guileful and covinous devices and practices shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding..."

Concerning the issue of Mr. Hammett's solvency, the Defendants have pointed to his financial statement of December 31, 1976, which reflects a substantial net worth. However, Hammett's own testimony reveals that in March, 1977, he was not in a position of liquidity, nor could he pay his maturing debts. (R–39) By the execution of the four options for no consideration, he effectively divested himself of all his properties and was most certainly rendered insolvent by the occurrence of these transactions.

## IV.

■ In an effort to furnish a complete background of this case, a brief discussion of the proceedings in the Chancery Court of Pulaski County, Arkansas, should be included. This case, entitled Lonoke Production Credit Association v. Robert O. Mosher, Patricia S. Mosher, and Vernon C. Hammet, Jr., essentially was a judicial foreclosure. On June 8, 1981, an amended and corrected decree was entered nunc pro tunc December 30, 1980, against Mr. Hammett and the other Defendants, jointly and severally, for the sum of $174,306.24, with interest at the rate of 10% per annum from October 9, 1978, as well as, costs and an attorney's fee of 10%. The real property, which was the subject matter of the law suit, was ordered to be sold and the proceeds of the sale were to be applied toward the judgment debt. The interest accrued, costs, and attorney's fee were added to this judgment, and on July 16, 1981, the real property was sold at a commissioner's sale for the sum of approximately $35,000.00. After these proceeds were applied to the judgment, there resulted a deficiency in the sum of $198,720.34. A subsequent deficiency judgment was entered against all Defendants, dated October 19, 1981. The purchase price for this real property, which comprised approximately 155 acres, being the sum of only $35,000.00, immediately caught the attention of the Court as being totally inadequate. However, on a review of the full proceedings held in the Chancery Court of Pulaski County, which were introduced as Plaintiffs' Collective Exhibit "1", the Court observed that there was an appraisal of this property included therein which reflected a value of $35,000.00, with the explanation that much of the land was subject to flooding and/or poor drainage. Consequently, in conformity with the earlier ruling against the Defendants' motion for summary judgment, this Court will not sustain a collateral attack on the judgment of a Court of competent jurisdiction. In addition, related to this same issue, this Court observes that Mr. Hammett listed the precise deficiency, i.e., $198,720.34, when initially filing his schedules in this case.

## V.

In addition to the agreement to convey the Glenbar Plantation property to Bank Sales Department, Inc., as discussed hereinabove, the testimony and documentary evidence indicate that Avondale Arms is preparing to take another step to further

remove certain properties from Vernon C. Hammett, Jr. The Avondale Arms corporate minutes, dated March 1, 1983, reflect that the corporation intends to convey "all of that certain real property together with fixtures and appurtenances thereunto belonging owned by Avondale Arms Apartments, Inc., to Wilderness Homes and Apartments, Inc., a Mississippi corporation, in consideration of 2,500 shares of common stock of Wilderness Homes and Apartments, Inc.". (Plaintiffs' Exhibit "36") Coincidentally, Wilderness Homes and Apartments, Inc., hereinafter referred to as Wilderness Homes, was incorporated on February 11, 1983, by none other than Vernon C. Hammett, Jr., and Mrs. Annette Fore Hammett. (Plaintiffs' Exhibit "39") The directors of Wilderness Homes are designated as Vernon C. Hammett, Jr., Annette Fore Hammett, and Dan Hammett. The obvious import of this transaction cast yet another cloud over the financial dealings of the several Defendants.

## VI.

The Court has reviewed the following factors, to-wit:

A. That Vernon C. Hammett, Jr., was an incorporator, officer, and director of Avondale Arms since its inception through the present time; and additionally, although he owned no stock, he controlled the voting rights to all issued and outstanding shares pursuant to the voting trust agreement.

B. From the testimony of several Defendants, Vernon C. Hammett, Jr., made decisions for Avondale Arms on a day to day basis, and was fully involved in the management of the corporate assets.

C. The four option agreements, which were executed by Mr. Hammett without consideration paid by Avondale Arms, legally conveyed to the corporation the right to acquire the respective properties for a period of five years. Even after the execution of the options, Mr. Hammett, without permission from the corporation, negotiated a loan in the sum of $350,000.00, with Prudential Insurance Company, and conveyed away a residence valued at $40,900.00, retaining the proceeds for his own personal use. Ironically, on exercising the options, the corporation gratuitously forgave Mr. Hammett from having to repay the corporation these sales proceeds.

D. Without contradiction, all of the witnesses testified that the purpose of the several options was to divest Mr. Hammett of his assets for reasons of poor health, estate planning, etc. Dan Hammett, as mentioned hereinabove, testified candidly that the options were exercised and the properties conveyed to Avondale Arms in July, 1981, when the parties became aware of the Lonoke Production Credit Association deficiency judgment.

E. The option terms and the subsequent consideration paid to Vernon C. Hammett, Jr., by Avondale Arms, as to the properties described in Paragraph III. A., B., C., and E., hereinabove, are so grossly disproportionate when compared to the actual values of said properties that this Court has no choice but to find that Vernon C. Hammett, Jr., received much less than a reasonably equivalent value in exchange for such transfers, clearly within the meaning of 11 U.S.C., § 548(a)(2)(A).

F. The Court also finds that Avondale Arms was simply the "alter ego" of Vernon C. Hammett, Jr. The facts of this case follow a classic pattern. A debtor, who cannot pay his debts as they mature, has tried to make use of a corporation, owned by family members, to preserve his assets and to place such assets beyond the reach of creditors. Consistently, the Courts have condemned such efforts and directed the restoration of the converted assets to the creditors. (See: *McWilliams v. Edmonson*, 162 F.2d 454 (5th Cir.—1947), cert. denied, 332 U.S. 835, 68 S.Ct. 216, 92 L.Ed. 408 (1947); *In Re: Clark Supply Co.*, 172 F.2d 248, 254 (7th Cir.—1949); *Matter of Christian and Porter Aluminum Co.*, 584 F.2d 326 (9th Cir.—1978); *Sampsell v. Imperial Paper and Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941).)

## VII.

 Because of all the foregoing reasons, set forth in Paragraphs I—VI, hereinabove, the four options and the subsequent conveyances by Vernon C. Hammett, Jr., to Avondale Arms as to the properties described in Paragraph III, A., B., C., and E., should be avoided and set aside as being fraudulent conveyances, all pursuant to 11 U.S.C. § 544, § 548(a)(1), § 548(a)(2), and § 15–3–3, Mississippi Code of 1972, as amended. The options and the related conveyances were arranged for the purpose of not only defeating the rights of the Plaintiff herein, but all other creditors of Vernon C. Hammett, Jr. The net effect of this scenario was to divest Mr. Hammett of all of his property ownership while at the same time leaving nothing in his possession in return. Mr. Hammett was thereby placed in the position of being "judgment proof". (See: *In Re: Checkmate Stereo and Electronics, Ltd.*, 9 B.R. 585 (Bankr.E.D.N.Y.—1981).)

## VIII.

 In view of the fact that this Court has found that Avondale Arms was merely the "alter ego" of Vernon C. Hammett, Jr., the payments made by this corporation to the several creditors, listed on Defendants' Exhibit "24", were actually for the benefit of Mr. Hammett and in furtherance of the overall plot contrived with the corporation. Therefore, this Court is of the opinion that Avondale Arms should receive no credit for these payments following the setting aside of the options and the related conveyances as discussed hereinabove. The Court cannot begin to consider Avondale Arms as a good faith purchaser for value, but only as a willing participant in the effort to defeat the rights of Mr. Hammett's creditors. (See: *Jackson v. Star Sprinkler Corp. of Florida*, 575 F.2d 1223, 1235 (8th Cir.—1978).)

## IX.

The contemplated transaction between Avondale Arms and Bank Sales Department, Inc., was negotiated during the pendency of this bankruptcy with a family member who could conceivably be considered an insider. Inasmuch as this Court has set aside through this decision the conveyance of Glenbar Plantation from Vernon C. Hammett, Jr. to Avondale Arms, the installment sales contract between Avondale Arms and Bank Sales Department, Inc., must likewise be set aside. There is, however, the possibility that Bank Sales Department, Inc., may have a lien against the Glenbar Plantation property if it was, in fact, a good faith transferee, and if it has made payments in good faith that are contemplated by the provisions of 11 U.S.C. § 550. At this time, the proof before the Court is insufficient to make a determination as to this issue. Consequently, if the attorney representing Bank Sales Department, Inc., requests a hearing for a subsequent determination as to this particular issue, one will be afforded by the Court. If a request for a hearing is not made within fifteen (15) days from the date of this Opinion, this Court will have no choice but to conclude that Bank Sales Department, Inc., was not a good faith purchaser for value.

An Order will be entered consistent with this Opinion.